UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

56 WILLOUGHBY A LLC and 56
WILLOUGHBY B LLC,

                    Plaintiffs,

          *v.*

JACK ZHANG,

                    Defendant.

**REPORT &
RECOMMENDATION**
20-CV-3973-CBA-SJB

**BULSARA, United States Magistrate Judge:**

Plaintiffs 56 Willoughby A LLC and 56 Willoughby B LLC (together, "56 Willoughby" or "Plaintiffs") commenced this action on August 26, 2020 against Defendant Jack Zhang ("Zhang"), alleging breach of a real estate guaranty agreement, and seeking $113,000 in damages, together with prejudgment interest, attorney's fees and costs, and post-judgment interest.[1] Zhang failed to answer or otherwise respond to the Complaint. On October 23, 2020, the Clerk of the Court entered a default against Zhang.[2] On January 8, 2021, Plaintiffs moved for a default judgment.[3] The Honorable Carol Bagley Amon referred the motion to the undersigned on January 8, 2021, for a report and recommendation.[4]

For the reasons outlined below, the Court respectfully recommends that the motion for default judgment be granted in part and damages, attorney's fees and costs, and prejudgment interest be awarded as detailed herein.

---

[1] Verified Compl. dated August 25, 2020 ("Compl."), Dkt. No. 1.

[2] Certificate of Default dated Oct. 23, 2020 ("Certificate of Default"), Dkt. No. 9.

[3] Notice of Mot. for Default J. dated Jan. 7, 2021 ("Mot."), Dkt. No. 11.

[4] Order Referring Mot. dated Jan. 8, 2021.

<u>FACTUAL BACKGROUND AND PROCEDURAL HISTORY</u>

Plaintiff 56 Willoughby A LLC is a New York limited liability company, with its principal place of business in Brooklyn, New York. (Compl. ¶ 3). Its members are citizens of New York. (*Id.*). Plaintiff 56 Willoughby B LLC is a New York limited liability company, with its principal place of business in Brooklyn, New York. (*Id.* ¶ 4). Its members are citizens of New York. (*Id.*). Defendant Zhang is an individual and citizen of Arizona who resides at 752 East Torrey Pines Place, Chandler, Arizona 85249. (*Id.* ¶ 5). Zhang is the president and a member of Paw Property Inc. ("Paw Property"), a New Jersey corporation. (*Id.* ¶¶ 9–10). Zhang is also the sole and managing member of Willoughby DTB LLC ("Willoughby DTB"), a New York limited liability company. (*Id.* ¶¶ 16, 18). Willoughby DTB is not a defendant in the case.

On August 1, 2012, Plaintiffs and Paw Property entered into a ten-year, triple net lease[5] agreement for Paw Property to rent a commercial property at 56 Willoughby Street, Brooklyn, New York 11201. (*Id.* ¶¶ 9–10; Decl. in Supp. of Mot. dated Jan. 7, 2021 ("Golowa Decl."), Dkt. No. 13, ¶ 7; Lease dated as of Aug. 1, 2012 ("Lease"), attached as Ex. A to Golowa Decl., Dkt. 13). Pursuant to the Lease, Paw Property agreed to make monthly rent payments to Plaintiffs before the first day of each month. (Compl. ¶ 12; Lease § 1.6). And as "additional rent," Paw Property also agreed to pay any real estate taxes within 20 days of receipt of either a tax bill or notice from Plaintiffs, (Lease § 4.5), as well as "water charges and/or sewer rents" within 15 days of receipt of a bill from Plaintiffs, (*id.* § 4.6). In the event of default, Paw Property agreed to pay, in

---

[5] "A lease in which the lessee pays all the expenses, including mortgage interest and amortization, leaving the lessor with an amount free of all claims." *Net-Net-Net Lease*, Black's Law Dictionary (11th ed. 2019).

addition to all rent and additional rent owed, liquidated damages, interest, and "reasonable counsel fees[ ] involved in collecting or endeavoring to collect" unpaid rent or additional rent. (*Id.* §§ 12.1–.2, 12.4–.5).

On July 13, 2012, Zhang executed an "absolute and unconditional" personal guaranty of Paw Property's obligations under the Lease. (Compl. ¶ 13; Guarantee dated July 13, 2012 ("Original Guaranty"), attached as Ex. B to Golowa Decl., Dkt. 13, § 3). Under the Original Guaranty, Zhang agreed to pay to Plaintiffs "all rent and additional rent that has accrued or may accrue under the terms of the Lease." (Original Guaranty § 1). Additionally, Zhang waived

> all notice of non-payment, non-performance, non-observance or proof, or notice, or demand, whereby to charge [Zhang] therefore, all of which [he] expressly waives and expressly agrees that the validity of this guarantee and the obligation of [Zhang] hereto shall in no ways be terminated, effected or impaired by reason of the assertion by [Plaintiffs] against [Paw Property] of any of the rights of remedies reserved to [Plaintiffs] pursuant to the performance of the lease.

(*Id.* § 4). The parties agreed that the Original Guaranty would "remain and continue in full force and effect as to any renewal, modification, option period or extension of the lease." (*Id.* § 5). They also agreed that the Original Guaranty would terminate if 56 Willoughby executed a replacement guaranty with a "new replacement guarantor of similar financial stability to the then existing guarantor." (*Id.* § 8) (emphasis omitted).

Several years later, on April 18, 2016, Paw Property assigned the Lease to Willoughby DTB. (Compl. ¶ 16; Golowa Decl. ¶ 14; Assignment and Assumption of Lease dated Apr. 18, 2016 ("Assignment"), attached as Ex. A to Suppl. Decl. in Further Supp. of Mot. dated July 7, 2021 ("Suppl. Golowa Decl."), Dkt. No. 17). Pursuant to the Assignment, Willoughby DTB assumed Paw Property's Lease obligations. (Assignment at 1 ("[Willoughby DTB] agrees to pay the rent promptly and perform all of the terms of

the Lease as of the date of this Assignment. [Willoughby DTB] assumes full responsibility for the Lease as if [it] signed the Lease originally as Tenant."); *accord* Compl. ¶ 17; Golowa Decl. ¶ 15). At the same time, Zhang executed a second personal guaranty of Willoughby DTB's obligations. (Compl. ¶ 18; Guaranty dated April 18, 2016 ("Replacement Guaranty"), attached as Ex. C to Golowa Decl., Dkt. No. 13). Pursuant to this second guaranty, Zhang

> unconditionally and irrevocably guarant[eed] that all payments required to be made under the Lease will be promptly paid when due, together with any and all reasonable legal costs and expenses incurred or paid by [Plaintiffs] as a result of any default in any of the payments required to be made under the Lease.

(Replacement Guaranty at 1). Zhang also waived to the extent allowed by law:

> (1) presentment and demand for any payment or performance due under the Lease; (2) notice of the occurrence of any default in any payments or performance due under the lease; (3) protest of the non-payment of any payment or of the non-performance of any performance due under the Lease; (4) notice of presentment, demand and protest; (5) notice of acceptance of the terms and provisions hereof . . . ; (6) notice of any indulgence or extensions or consents granted to the Tenant; (7) any requirements of diligence or promptness . . . in the enforcement of . . . rights under the Lease or the Assignment; and (8) any and all notices of every kind and description which may otherwise be required.

(*Id.* at 2).

Willoughby DTB defaulted on its obligations in 2019. (Compl. ¶ 26; Golowa Decl. ¶ 24). Specifically, Willoughby DTB failed to pay rent in September, October, November, and December 2019; quarterly water and sewer charges billed on January 16, 2019, May 1, 2019, August 1, 2019, and November 1, 2019; and its share of the real estate taxes for 2019. (Golowa Decl. ¶ 27). Plaintiffs notified Willoughby DTB of these defaults. (Compl. ¶ 27; Golowa Decl. ¶ 25). However, Willoughby DTB did not satisfy its outstanding debts. (Compl. ¶ 27; Golowa Decl. ¶ 25).

Plaintiffs commenced an action in Kings County Civil Court (the "Civil Court Action") to recover the money owed by Willoughby DTB under the Lease. (*See* Golowa Decl. ¶ 26). On February 10, 2020, Judge Rupert V. Barry found Willoughby DTB liable for $113,000. (Decision/Order dated Jan. 3, 2020 ("Civil Ct. Order"), attached as Ex. D to Golowa Decl., Dkt. No. 13).[6] Neither Willoughby DTB nor Zhang paid any of this amount. (Compl. ¶ 40).

On August 26, 2020, Plaintiffs commenced this action against Zhang. (Compl.). Plaintiffs allege Zhang breached his personal guaranty of the Lease by failing to pay the amounts owed under the Lease, and they assert a single claim for breach of guaranty. (*Id.* ¶¶ 31–44).

Zhang was served with a summons and the Complaint on September 1, 2020 via personal service at his home on an adult authorized to accept service. (Proof of Service dated Sept. 2, 2020 ("Summons Returned Executed"), Dkt. No. 6). Zhang failed to respond, and at Plaintiffs' request, (Req. for Certificate of Default dated Oct. 19, 2020, Dkt. No. 7), the Clerk of Court issued a certificate of default as to Zhang, (Certificate of Default). On January 8, 2021, Plaintiffs moved for default judgment on the single count in the Complaint. (Mot.). The motion and its supporting papers were mailed to Zhang at 752 East Torrey Pines Place, Chandler, Arizona 85249, his last known residential address. (Aff. of Service by Mail dated January 8, 2021 ("Default J. Service"), Dkt. No.

---

[6] This consists of $71,261.20 in unpaid base rent ($17,815.30 for each of September, October, November, and December 2019); $9,203.17 in water and sewer charges in 2019; and $32,651.10 for a 50% share of real estate taxes for 2019. (Golowa Decl. ¶ 27). Although the actual sum of these charges is $113,115.47, Plaintiffs were granted only $113,000, (Civil Ct. Order), and Plaintiffs now only seek $113,000, (Proposed Default J. ("Proposed Default J."), attached as Ex. F to Golowa Decl., Dkt. No. 12).

15).  On June 8, 2021, the Court requested, (Order dated June 8, 2021), and Plaintiffs provided, (Suppl. Decl. in Further Supp. of Pls.' Req. for Att'ys' Fees on Mot. dated June 22, 2021 ("Bonfield Suppl. Decl."), Dkt. No. 16), their counsel's contemporaneous billing records and additional support for the requested fee award.  This supplemental submission was mailed to Zhang at his last known residential address.  (Aff. of Service by Mail dated June 22, 2021 ("Suppl. Default J. Service"), attached to Bonfield Suppl. Decl., Dkt. No. 16).  And on July 7, 2021, the Court requested, (Order dated July 7, 2021), and Plaintiffs provided, (Suppl. Golowa Decl.), a copy of the agreement assigning the Lease from Paw Property to Willoughby DTB, (Assignment).  This second supplemental submission was also mailed to Zhang at his last known residential address.  (Aff. of Service by Mail dated July 7, 2021 ("Second Suppl. Default J. Service"), attached to Suppl. Golowa Decl., Dkt. No. 17).

Plaintiffs seek judgment against Zhang in the amount of $131,570.10, which consists of: (1) $113,000, the amount of the judgment entered in the Civil Court Action; (2) $17,967.60 in attorney's fees;[7] (3) $602.50 in costs; and (4) prejudgment interest. (Proposed Default J.; Decl. in Supp. of Mot. dated Jan. 7, 2021 ("Bonfield Decl."), Dkt No. 12, ¶¶ 16–19; Suppl. Bonfield Decl. ¶ 8).[8]  For the reasons stated below, the Court respectfully recommends the motion be granted in part and denied in part.

---

[7] Plaintiffs included a $90.10 legal research fee in this calculation, (Billing Records ("Billing Records"), attached as Ex. A to Suppl. Bonfield Decl., Dkt. No. 16, at 15; Fee Hr'g Report dated June 21, 2021 ("Fee Hr'g Report"), attached as Ex. B to Suppl. Bonfield Decl., Dkt. No. 16, at 3)), which is addressed *infra*.

[8] Plaintiffs do not seek post-judgment interest in the motion for default judgment, (Proposed Default J.), as a result, the Court deems this claim waived.

DISCUSSION

I.     <u>Subject-Matter Jurisdiction</u>

"This Court has an independent obligation to ensure that subject-matter jurisdiction exists." *Stets v. Stets*, No. 18-CV-1401, 2020 WL 9439459, at *2 (E.D.N.Y. Nov. 25, 2020), *report and recommendation adopted*, Order (May 5, 2021).  Plaintiffs assert this Court has diversity jurisdiction over this dispute.  (Compl. ¶ 6).  A federal court has original jurisdiction over actions arising from disputes between "citizens of different states" when the amount in controversy is in excess of $75,000 "exclusive of interest and costs."  28 U.S.C. § 1332(a).  The Court finds that it possesses diversity jurisdiction in this case.

"[T]he party invoking federal jurisdiction bears the burden of proving facts to establish that jurisdiction."  *Linardos v. Fortuna*, 157 F.3d 945, 947 (2d Cir. 1998).  Plaintiffs allege Zhang, "[u]pon information and belief, is a citizen of the State of Arizona."  (Compl. ¶ 5; *see also* Summons Returned Executed; Default J. Service; Suppl. Default J. Service; Second Suppl. Default J. Service).  On default, this is sufficient to establish Zhang is a citizen of Arizona and thereby to establish diversity jurisdiction.[9] *See e.g.*, *Gould v. Marconi Dev. Grp., LLC*, No. 19-CV-1454, 2020 WL 2042332, at *1, *6 (N.D.N.Y. Apr. 28, 2020) (entering default judgment where plaintiff's allegations of

---

[9] The Replacement Guaranty reflects that Zhang, at one time, resided in Brooklyn.  (Replacement Guaranty at 3 (listing Zhang's home address in Brooklyn)).  "For purposes of diversity jurisdiction, a party's citizenship depends on [her] *domicile*."  *Linardos*, 157 F.3d at 948 (emphasis added).  Residence—especially former residence—is not dispositive of domicile.  The Court concludes, despite this indication that Zhang lived in New York at one time, that Plaintiffs have sufficiently demonstrated Zhang is domiciled in Arizona and thus a citizen of Arizona for the purposes of diversity jurisdiction.

defendants' citizenship were based on "information and belief"); *Schostak v. Wright*, No. 02-CV-8899, 2003 WL 1960581, at *1 (S.D.N.Y. Apr. 25, 2003) (same).

"[T]he citizenship of a limited liability company is determined by the citizenship of each of its members." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 60 (2d Cir. 2016). Plaintiffs are limited liability companies "comprised entirely of members who are citizens of the State of New York." (Compl. ¶¶ 3–4). Thus, Plaintiffs are citizens of New York. Because Plaintiffs are citizens of New York and Zhang is a citizen of Arizona, the Court concludes there is complete diversity.

Finally, Plaintiffs seek $113,000 in damages, (Compl. ¶ 44; Golowa Decl. ¶ 27), which exceeds $75,000. Accordingly, the Court has diversity jurisdiction over this dispute.

II.   Personal Jurisdiction

"[B]efore a court grants a motion for default judgment, it may first assure itself that it has personal jurisdiction over the defendant." *Sinoying Logistics Pte Ltd. v. Ya Da Xin Trading Corp.*, 619 F.3d 207, 213 (2d Cir. 2010); *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 139 (2d Cir. 2011) ("A non-appearing defendant does not, by defaulting, forfeit its right to challenge any ensuing default judgment for lack of personal jurisdiction."). A court may *sua sponte* dismiss an action for lack of personal jurisdiction following a default. *See, e.g.*, *Sinoying Logistics Pte Ltd.*, 619 F.3d at 213–14; *Yao Wu v. BDK DSD*, No. 14-CV-5402, 2015 WL 5664256, at *2–3 (E.D.N.Y. Aug. 31, 2015) (recommending denial of default judgment motion and dismissal of action against unknown residents of China where plaintiff did not allege any connection between their activities and New York), *report and recommendation adopted*, 2015 WL 5664534 (Sept. 22, 2015).

The Court concludes it possesses personal jurisdiction over Zhang. "The lawful exercise of personal jurisdiction by a federal court requires satisfaction of three primary requirements." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012). These requirements are: (1) proper service upon the defendant; (2) a statutory basis for personal jurisdiction; and (3) consistency with the principles of constitutional due process. *Id.* at 59–60. Each is met here.

First, Zhang was properly served. A copy of the summons and Complaint were left at Zhang's dwelling in Arizona with Cindy Zhang, a person of suitable age and discretion who also resides there, in accordance with Rule 4(e)(2)(B) ("[A]n individual . . . may be served in a judicial district of the United States by . . . leaving a copy of [the summons and complaint] at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there[.]"). (*See* Summons Returned Executed).

Second, there is a statutory basis for personal jurisdiction. This statutory basis is "determined by the law of the state in which the court is located, which in this case is New York." *Madison Stock Transfer, Inc. v. Exlites Holdings Int'l, Inc.*, 368 F. Supp. 3d 460, 480 (E.D.N.Y. 2019) (quoting *Spiegel v. Schulmann*, 604 F.3d 72, 76 (2d Cir. 2010)). Because Zhang is domiciled outside New York, the operative provision of New York law is its long-arm statute: C.P.L.R. § 302(a). *Id.*

New York's long-arm statute permits a court to exercise jurisdiction over any out-of-state defendant who "owns, uses or possesses any real property situated within the state." C.P.L.R. § 302(a)(4). There must also be "a relationship between the property and the cause of action sued upon." *Lancaster v. Colonial Motor Freight Line, Inc.*, 177 A.D.2d 152, 159 (1st Dep't 1992); *see, e.g.*, *Stroud v. Tyson Foods, Inc.*, 91 F. Supp. 3d

381, 390 (E.D.N.Y. 2015) (granting motion to dismiss for lack of personal jurisdiction where plaintiff failed to demonstrate a relationship between her allegations and the defendants' New York property).

Zhang personally guaranteed a lease of real property in Brooklyn, New York. (Compl. ¶¶ 10, 18; Golowa Decl. ¶¶ 7, 16). Leasing real property constitutes use under section 302(a)(4). *Genesee Scrap & Tin Baling Corp. v. Lake Erie Bumper Plating Corp.,* 57 A.D.2d 1068, 1069 (4th Dep't 1977). Guaranteeing a lease of real property in New York also constitutes use, given that, "[a]lthough there are very few cases involving § 302(a)(4), the prototypical case involves real property at the very center of the dispute." *Sung-Ho Hwang v. Grace Road Church*, No. 14-CV-7187, 2016 WL 1060247, at *4 n.6 (E.D.N.Y. Mar. 14, 2016); *cf. 5-Star Mgmt., Inc. v. Rogers*, 940 F. Supp. 512, 517 (E.D.N.Y. 1996) (finding defendant's default on a loan secured by property in New York constituted "use" under to section 302(a)(4)). Accordingly, the exercise of personal jurisdiction over Zhang is proper under New York's long-arm statute.

And third, the exercise of personal jurisdiction also comports with the constitutional requirement of due process. To comport with constitutional due process, a court may only exercise personal jurisdiction over a defendant who has "purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into court here." *Licci*, 732 F.3d at 170 (quoting *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 127 (2d Cir. 2002)). The exercise must also be reasonable. *Id.*

Zhang guaranteed a lease of New York property, which provided for payment of rent in New York to two New York entities doing business in New York. By "delivering such a guaranty," he "deliberately contracted with a New York entity and thus 'should

reasonably anticipate being haled into court [here].'" *59th St. Assocs. v. Reliance Mediaworks Ltd.*, No. 14-CV-7435, 2016 WL 861212, at *3 (S.D.N.Y. Mar. 4, 2016) (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474 (1985)) (finding exercise of personal jurisdiction constitutionally appropriate where defendant "established contacts with New York by guaranteeing a lease that states on its face that lessor is a New York-based entity and that lessee must pay rent in New York"); *see also Black River Assocs. v. Newman*, 218 A.D.2d 273, 280 (4th Dep't 1996) (finding exercise of personal jurisdiction over nondomiciliary appropriate where he "contemplated continued ownership, use, possession, and enjoyment of New York realty, continued payment of property taxes and assessments in New York, and a continued relationship with his New York tenant").

III.    Entry of Default Judgment

"Rule 55 of the Federal Rules of Civil Procedure establishes a two-step process for a plaintiff to obtain a default judgment." *See Shariff v. Beach 90th St. Realty Corp.*, No. 11-CV-2551, 2013 WL 6835157, at *3 (E.D.N.Y. Dec. 20, 2013) (adopting report and recommendation).  First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a).  Second, after default has been entered, and the defendant fails to appear or move to set aside the default under Rule 55(c), the Court may, on plaintiff's motion, enter a default judgment against that defendant. *Id*. r. 55(b)(2).  The Clerk entered a default against Zhang on October 23, 2020.  (Certificate of Default).

The next question, before reaching liability or damages, is whether Zhang's conduct is sufficient to warrant entry of a default judgment.  In determining whether to

enter a default judgment, the Court is guided by the same factors that apply to a motion to set aside entry of a default. *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993). "These widely accepted factors are: (1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented." *Id.*; *see also Arch Specialty Ins. Co. v. Apco Indus., Inc.*, No. 18-CV-4041, 2020 WL 6581000, at *3 (E.D.N.Y. Oct. 5, 2020), *report and recommendation adopted*, Order (Nov. 9, 2020).

First, Zhang's failure to respond to the Complaint demonstrates his default was willful. *See, e.g.*, *Indymac Bank v. Nat'l Settlement Agency, Inc.*, No. 07-CV-6865, 2007 WL 4468652, at *1 (S.D.N.Y. Dec. 20, 2007) (finding the defendants' non-appearance and failure to respond "indicate willful conduct" and granting plaintiff's default judgment against them). Zhang had sufficient notice of the present litigation, as a copy of the summons and Complaint were personally delivered to Cindy Zhang, who resided there and stated she was authorized to accept service on his behalf on September 1, 2020. (Summons Returned Executed). The motion for default judgment and supporting papers, along with the supplemental submissions, were also served via mail to Zhang's last known residential address. (Default J. Service; Suppl. Default J. Service; Second Suppl. Default J. Service). Notwithstanding this notice and service, Zhang did not respond to the Complaint or the motion for default judgment, did not appear, and has not in any way attempted to defend himself.

As to the second factor, 56 Willoughby would be prejudiced if the motion for default judgment were denied because "[w]ithout the entry of a default judgment, Plaintiff[s] would be unable to recover for the claims adequately set forth in the Complaint." *Sola Franchise Corp. v. Solo Salon Studios Inc.*, No. 14-CV-946, 2015 WL

1299259, at *15 (E.D.N.Y. Mar. 23, 2015) (adopting report and recommendation); *Trs.*
*of the Empire State Carpenters Annuity, Apprenticeship, Lab. Mgmt. Coop., Pension &*
*Welfare Funds v. Lynnview Constr. Corp.*, No. 12-CV-5644, 2013 WL 4852312, at *7
(E.D.N.Y. Sept. 10, 2013) (adopting report and recommendation).

Third, the Court cannot conclude there is any meritorious defense to Plaintiffs'
allegations because Zhang did not appear and no defense has been presented to the
Court. *E.g.*, *United States v. Hemberger*, No. 11-CV-2241, 2012 WL 1657192, at *2
(E.D.N.Y. May 7, 2012); *Indymac Bank*, 2007 WL 4468652, at *1.

All three factors weigh in favor of the entry of default judgment. The Court now
turns to the liability imposed, damages, and other relief to be awarded.

IV.    Liability

In deciding a motion for default judgment, a court "is required to accept all of the
[plaintiff]'s factual allegations as true and draw all reasonable inferences in its favor."
*Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). A party's default is deemed an
admission of all well-pleaded allegations of liability. *See Greyhound Exhibitgroup, Inc.*
*v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d. Cir. 1992); *Morales v. B & M Gen.*
*Renovation Inc.*, No. 14-CV-7290, 2016 WL 1266624, at *2 (E.D.N.Y. Mar. 9, 2016),
*report and recommendation adopted*, 2016 WL 1258482 (Mar. 29, 2016).

The court must then determine "whether the unchallenged facts constitute a
legitimate cause of action." 10A Charles Alan Wright & Arthur R. Miller et al., *Federal*
*Practice and Procedure* § 2688.1 (4th ed. 2021) ("Once the default is established,
defendant has no further standing to contest the factual allegations of plaintiff's claim
for relief. Even after default, however, it remains for the court to determine whether the
unchallenged facts constitute a legitimate cause of action, since a party in default does

not admit conclusions of law."); *Labarbera v. ASTC Labs. Inc.*, 752 F. Supp. 2d 263, 270 (E.D.N.Y. 2010) (adopting report and recommendation).

Under New York law,[10] the elements of breach of guaranty are "(1) an absolute and unconditional guaranty, (2) the underlying debt, and (3) the guarantor's failure to satisfy the unpaid debt." *Merch. Cash & Cap., LLC v. Haute Soc'y Fashion, Inc.*, No. 16-CV-2696, 2017 WL 2912452, at *2 (E.D.N.Y. July 6, 2017); *see also Cooperatieve Centrale Raiffeisen-Boerenleenbank, B.A. v. Navarro*, 25 N.Y.3d 485, 492 (2015).

As to the first element, Plaintiffs allege that Zhang personally guaranteed the obligations owed by Willoughby DTB under the Lease. (Replacement Guaranty at 1). The Replacement Guaranty states that "the obligations of the undersigned under this Guaranty shall be absolute and unconditional." (*Id.* § d). This kind of "broad, sweeping and unequivocal language . . . forecloses any challenge to the enforceability and validity of the documents which establish the defendant's liability" as guarantor. *Navarro*, 25 N.Y.3d at 494. The Replacement Guaranty is therefore an "absolute and unconditional" obligation of Zhang. *See, e.g.*, *H.L. Realty, LLC v. Edwards*, 131 A.D.3d 573, 574 (2d Dep't 2015) (concluding based on similar language that plaintiff was entitled to seek damages from the guarantor resulting from the tenant's default under the lease); *136 Field Point Circle Holding Co. v. Invar Int'l Holding, Inc.*, 644 F. App'x 10, 12–13 (2d Cir. 2016) (affirming enforcement of guaranty where guarantor "absolutely,

---

[10] 56 Willoughby exclusively cites New York law. (Mem. at 7–10); *e.g.*, *Core-Mark Midcontinent, Inc. v. Tri-State Candy Wholesale, Inc.*, No. 14-CV-3694, 2018 U.S. Dist. LEXIS 151207, at *22–23 (E.D.N.Y. Aug. 31, 2018) (recommending the application of New York law to a contract dispute where "[t]he parties exclusively cite New York law" and the Court found no "public policy why New York law should not apply").

unconditionally and irrevocably" guaranteed "the liabilities and obligations" of parties to a lease).

As to the second element, there is an underlying debt. Willoughby DTB defaulted on its obligations—which it undertook via assignment of the Lease from Paw Property—under the Lease by failing to pay its base rent for September through December 2019, water and sewer charges in 2019, and its 50% share of real estate taxes for 2019. (Compl. ¶¶ 26–27; Golowa Decl. ¶¶ 24–25, 27; *supra* n.6).

As to the third element, Zhang has never satisfied the debts of Willoughby DTB as he was contractually obligated to do. (Compl. ¶ 40; Bonfield Decl. ¶ 22). Thus, he has failed to perform under the Replacement Guaranty. *See, e.g.*, *W6 Facility X, LLC v. W. 6 Care Ctr., Inc.*, 169 A.D.3d 968, 969 (2d Dep't 2019) (concluding that plaintiff established defendant's liability for breach of guaranty "by demonstrating that the guarantor breached his obligations under the guaranty"); *VW Credit, Inc. v. Big Apple Volkswagen, LLC*, No. 11-CV-1950, 2012 WL 919386, at *4 (S.D.N.Y. Mar. 15, 2012) ("Equally evident is defendants' failure to perform under the guaranty, as it is established that [plaintiff] has not been repaid the amounts due and owing it under the Loan Agreements, by either [the borrower] or by any of the alleged guarantors.").

For these reasons, the Court finds Zhang is liable for breach of the Replacement Guaranty.

V.  Damages, Fees, Costs, and Interest

"While a party's default is deemed to constitute a concession of all well-pleaded allegations of liability, it is not considered an admission of damages." *Greyhound Exhibitgroup,* 973 F.2d at 158. "[A]lthough the default establishes a defendant's liability, unless the amount of damages is certain, the court is required to make an

independent determination of the sum to be awarded." *Griffiths v. Francillon*, No. 10-CV-3101, 2012 WL 1341077, at *1 (E.D.N.Y. Jan. 30, 2012) (quoting *Ann Taylor, Inc. v. Interstate Motor Carrier, Inc.*, No 03-CV-7502, 2004 WL 2029908, at *3 (S.D.N.Y. Sept. 13, 2004)), *report and recommendation adopted*, 2012 WL 1354481 (Apr. 13, 2012). "The court must conduct an inquiry to ascertain the amount of damages with reasonable certainty." *Joe Hand Promotions, Inc. v. El Norteno Rest. Corp.*, No. 06-CV-1878, 2007 WL 2891016, at *2 (E.D.N.Y. Sept. 28, 2007) (adopting report and recommendation) (citing *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1992)). "Where, on a damages inquest, a plaintiff fails to demonstrate its damages to a reasonable certainty, the court should decline to award any damages even though liability has been established through default." *Lenard v. Design Studio*, 889 F. Supp. 2d 518, 527 (S.D.N.Y. 2012) (adopting report and recommendation) (collecting cases).

56 Willoughby seeks $131,570.10, which consists of: (1) $113,000 in damages, the judgment entered in the Civil Court Action; (2) $17,967.60 in attorney's fees; and (3) $602.50 in costs. (Bonfield Decl. ¶¶ 16–17, 19; Golowa Decl. ¶¶ 26–27; Supp. Bonfield Decl. ¶ 7). Plaintiffs also seek prejudgment interest. (Proposed Default J.). For the reasons stated below, the motion should be granted in part.

A.   Damages

"A guarantor of payments to be made under a contract, as distinguished from a guarantor of the performance of a contract, can be held liable only for the amount of payments due thereunder, and not for damages resulting from a breach of the contract." 63 N.Y. Jur. 2d *Guaranty and Suretyship* § 392 (2021). 56 Willoughby seek $113,000 in damages, which consists of unpaid rent, water and sewer charges, and real estate

taxes. 56 Willoughby has established that under the Replacement Guaranty they are owed, from Zhang, the base rent for September to December 2019, the 2019 water and sewer charges, and the tenant's share of total real estate taxes for 2019. (Golowa Decl. ¶¶ 27–29). Plaintiffs have also established the amounts with requisite certainty: 56 Willoughby submitted the Lease, which outlined Willoughby DTB's payment obligations, (Lease arts. 1, 4), and the amounts due under the Lease are those to be paid by Zhang under the Replacement Guaranty. Plaintiffs also submitted a billing statement reflecting the charges and payments made in connection with the property. (Affidavit dated Dec. 24, 2019, attached as Ex. E to Golowa Decl., Dkt. No. 13; *accord* Golowa Decl. ¶¶ 27–29). This documentation reflects a balance owed in excess of $113,000. Plaintiffs have established that Zhang personally guaranteed these amounts, and absent his failure to pay under the Replacement Guaranty, they would have been paid these amounts. Thus, the Court respectfully recommends that Plaintiffs be awarded $113,000 in damages as they request. *See, e.g.*, *Mitsubishi Motor Credit of Am., Inc. v. Country Motors LLC*, 2008 WL 3200248, at *4 (E.D.N.Y. Aug. 5, 2008) (adopting report and recommendation) (finding guarantors liable for the full "amount due and owing by [the obligor]").

      B.    <u>Attorney's Fees</u>

Plaintiffs seek $17,967.60 in attorney's fees to compensate for 48.4 hours of work on the case. (Supp. Bonfield Decl. ¶¶ 7–8; Billing Records; Fee Hr'g Report). "Under the general rule in New York, attorney's fees are the ordinary incidents of litigation and may not be awarded to the prevailing party unless authorized by agreement between the parties, statute, or court rule." *Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 199 (2d Cir. 2003); *Nigri v. Liberty Apparel Co.*, 76 A.D.3d 842, 844 (1st Dep't 2010)

(affirming award of attorney's fees under guaranty where agreement "unambiguously requires payment of attorneys' fees").  In the Replacement Guaranty, Zhang agreed to pay "any and all reasonable legal costs and expenses incurred or paid by [Plaintiffs] as a result of any default in any of the payments required to be made under the Lease." (Replacement Guaranty at 1).  Because the award of attorney's fees is authorized by agreement between the parties, although they are recoverable, the Court must assess whether the fees claimed are reasonable.  *See F.H. Krear & Co. v. Nineteen Named Trs.*, 810 F.2d 1250, 1263 (2d Cir. 1987) ("As a general matter of New York law . . . when a contract provides that in the event of litigation the losing party will pay the attorneys' fees of the prevailing party, the court will order the losing party to pay whatever amounts have been expended by the prevailing party, so long as those amounts are not unreasonable.").

In assessing whether legal fees are reasonable, a court must determine the "presumptively reasonable fee" for an attorney's services by examining what a reasonable client would be willing to pay.  *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 183–84 (2d Cir. 2008).  To calculate the presumptively reasonable fee, a court must first determine a reasonable hourly rate for the legal services performed.  *Id.*  The next step is to determine the reasonableness of the hours expended by counsel.  *See, e.g.*, *LaBarbera v. Empire State Trucking, Inc.*, No. 07-CV-669, 2008 WL 746490, at *4–5 (E.D.N.Y. Feb. 26, 2007), *report and recommendation adopted*, 2008 U.S. Dist. LEXIS 21770 (Mar. 19, 2008). The number of hours spent on a lawsuit are considered unreasonable if they are "excessive, redundant, or otherwise unnecessary."  *See, e.g.*, *LaBarbera v. Frank J. Batchelder Transp. LLC*, No. 08-CV-3387, 2009 WL 240521, at *4 (E.D.N.Y. Feb. 2,

2009) (adopting report and recommendation) (quoting *Gierlinger v. Gleason*, 160 F.3d 858, 876 (2d Cir. 1998)).

Plaintiffs seek to recover $375 or $350 per hour for 47.9 hours of Mr. Bonfield's work as a senior associate. (Supp. Bonfield Decl. ¶¶ 5–7; Fee Hr'g Report). Plaintiffs also seek to recover $100 per hour for 0.5 of administrative work on this matter. (Billing Records at 12). The Court recommends that Mr. Bonfield's billing rate for legal work be reduced to $325 per hour.

"[C]ourts in the Second Circuit follow the forum rule, which dictates that 'courts should generally use the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable fee.'" *Bond v. Welpak Corp.*, No. 15-CV-2403, 2017 WL 4325819, at *5 (E.D.N.Y. Sept. 26, 2017) (quoting *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009)). Under this rule, the Court is guided by the rates charged by attorneys of "comparable skill, experience, and reputation." *Hui Lan Weng v. Fancy Lee Sushi Bar & Grill, Inc.*, No. 15-CV-5737, 2017 WL 5564892, at *2 (E.D.N.Y. Nov. 3, 2017), *report and recommendation adopted*, 2017 WL 5564593 (Nov. 18, 2017). In this District, approved hourly rates for attorneys normally range from "$200 to $450 for partners in law firms, $200 to $325 for senior associates, $100 to $200 for junior associates, and $70 to $100 for paralegals." *Id.* (citing *Houston v. Cotter*, 234 F. Supp. 3d 392, 402 (E.D.N.Y. 2017)). "Some judges 'have recognized slightly higher ranges in this district of $300–$450 per hour for partners, $200–$300 per hour for senior associates, and $100–$200 per hour for junior associates." *Singh v. A & A Mkt. Plaza, Inc.*, No. 15-CV-7396, 2019 WL 4861882, at *7 (E.D.N.Y. Sept. 30, 2019) (quoting *Safeco Ins. Co. of Am. v. M.E.S., Inc.*, No. 09-CV-3312, 2018 WL 2766139, at *7 (E.D.N.Y. June 8, 2018)) (collecting cases).

While the requested rates of $375 or $350 per hour falls outside of the range generally awarded to senior associates in this District, Mr. Bonfield's skills and experience warrant an award at the high end of the appropriate range. Mr. Bonfield is an associate at Wenig Saltiel LLP and a 1992 graduate of the University of Southern California School of Law. (Supp. Bonfield Decl. ¶ 3). He has served as lead counsel on this and numerous other commercial litigations. (*Id.*). Considering Mr. Bonfield's nearly 30 years of practice, but in light of the relatively simple nature of this case, the Court recommends a rate within the bounds for senior associates, albeit at the higher end, of $325 per hour. *See, e.g.*, *Higueral Produce, Inc. v. CKF Produce Corp.*, No. 18-CV-6760, 2019 WL 5694079, at *12–13 (E.D.N.Y. Aug. 16, 2019) (recommending reduction in associate billing rates from $400 and $385 to $375 and from $375 to $350 in light of the simplicity of the case), *report and recommendation adopted in relevant part*, 2019 WL 5693798 (Sept. 30, 2019); *see also United States ex rel. Tommasino v. Guida*, No. 10-CV-4644, 2017 WL 878587, at *5–6 (E.D.N.Y. Mar. 6, 2017) (reducing the hourly rate of an associate with 20 years' experience from $425 to $300).

Plaintiffs also seek reimbursement for Mr. Bonfield's administrative tasks at $100 hour. "[B]illing attorney time spent on 'administrative tasks' at paralegal hourly rates is permitted." *Douyon v. NY Med. Health Care, P.C.*, 49 F. Supp. 3d 328, 342 (E.D.N.Y. 2014). Because this requested hourly rate for administrative work falls within the range of approved hourly rates for paralegals, the Court finds it to be reasonable. *See, e.g.*, *id.* at 343 (collecting cases that $90–$100 per hour is reasonable for paralegals); *Mor USA, Inc. v. Adam Trading, Inc.*, No. 19-CV-07283, 2021 WL 799327, at *7 (E.D.N.Y. Feb. 10, 2021) (recommending hourly rate of $100 for experienced paralegal), *report and recommendation adopted*, 2021 WL 796061 (Mar. 1, 2021).

Turning next to the reasonableness of the time expended, according to the billing records submitted, Mr. Bonfield spent 48.4 hours[11] working on this case. (Billing Records; Fee Hr'g Report). This is within the range of hours expected on similar cases involving default judgment. *LG Funding, LLC v. Fla. Tilt, Inc.*, No. 15-CV-631, 2015 WL 5038195, at *3–5 (E.D.N.Y. Aug. 26, 2015) (finding 41.4 hours of legal work to be reasonable for a breach of contract default action); *Gen. Elec. Cap. Corp. v. G. Howard Assocs., Inc.*, No. 09-CV-3923, 2010 WL 2346296, at *7 (E.D.N.Y. May 18, 2010) (recommending reduction in total hours from 60.2 to 39.5 for the award of attorneys' fees based on the relative simplicity of the motion), *report and recommendation adopted*, 2010 WL 2348640 (June 9, 2010).

Therefore, the Court recommends $15,567.50 be awarded for Mr. Bonfield's legal work and $50 for administrative work, for a total of a $15,617.50 in attorney's fees.

C.    Costs

Plaintiffs seek reimbursement of costs consisting of $400 in court fees, $202.50 in service of process fees, and $90.10 for legal research fees. The Court recommends these be granted in full. In the Replacement Guaranty, Zhang agreed to pay "any and all reasonable legal costs and expenses incurred or paid by [Plaintiffs] as a result of any default in any of the payments required to be made under the Lease." (Replacement Guaranty at 1). The filing fee, legal research costs, and process server fees sought by Plaintiff are "reasonable legal costs and expenses incurred . . . as a result of any default." (*Id.*). Thus, the award of these costs to Plaintiffs is appropriate. *See Mack Fin. Servs. v. Poczatek*, No. 10-CV-3799, 2011 WL 4628695, at *11 (E.D.N.Y. Aug. 30, 2011)

---

[11] Mr. Bonfield's time records reflect 47.9 hours of legal work and 0.5 hours of administrative work. (*See* Fee Hr'g Report).

(recommending reasonable costs be awarded when provided for in underlying guaranty agreements), *report and recommendation adopted in relevant part*, 2011 WL 4628692 (Sept. 30, 2011); *PNC Equip. Fin., LLC v. Montauk Transp. Serv. Inc.*, No. 18-CV-5883, 2019 WL 8685091, at *5 (E.D.N.Y. Dec. 16, 2019) (same), *report and recommendation adopted*, 2020 WL 2219197 (May 7, 2020).

Filing fees are recoverable without supporting documentation if verified by the docket. *See, e.g.*, *Shalto v. Bay of Bengal Kabob Corp.*, No. 12-CV-920, 2013 WL 867420, at *2 (E.D.N.Y. Mar. 7, 2013) (adopting report and recommendation in part); *Philpot Music Times LLC*, No. 16-CV-1277, 2017 WL 9538900, at *11 (S.D.N.Y. Mar. 29, 2017) (stating that the filing fee is "a fact of which the Court can take judicial notice"), *report and recommendation adopted*, 2017 WL 1906902 (May 9, 2017). The docket indicates the $400 filing fee was paid. (Compl.). Therefore, although 56 Willoughby did not submit a receipt, the filing fee is recoverable.

Process server fees are also recoverable, but they must be supported by documentation. *See Martinez v. Alimentos Saludables Corp.*, No. 16-CV-1997, 2017 WL 5033650, at *29 (E.D.N.Y. Sept. 22, 2017) (recommending that the plaintiffs not be awarded process server fees absent supporting documentation and noting that "failure to provide adequate documentation of costs incurred will limit, or defeat recovery"), *report and recommendation adopted*, 2017 U.S. Dist. LEXIS 174714 (Oct. 18, 2017); *Sheldon v. Plot Com.*, No. 2015-CV-5885, 2016 WL 5107072, at *20 (E.D.N.Y. Aug. 26, 2016) (recommending the costs for serving defendant "be denied due to lack of adequate documentation"), *report and recommendation adopted*, 2016 WL 5107058 (Sept. 19, 2016). With their motion, 56 Willoughby provided an invoice for a process server fee of $202.50, (Invoice dated Sept. 15, 2020, attached as Ex. D to Bonfield Decl., Dkt. No. 12),

and indicated that this fee was paid, (Bonfield Decl. ¶ 17). This is sufficient for 56 Willoughby to recover. *See, e.g.*, *Arch Specialty Ins. Co. v. L&L Interior Contracting Servs. Corp.*, No. 18-CV-4175, 2019 WL 5394502, at *1 (E.D.N.Y. Oct. 22, 2019) (awarding $529.00 in costs based on invoices).

Plaintiffs also seek reimbursement for legal research costs of $90.10. (Fee Hr'g Report at 3; Billing Records at 15). Computerized research costs are recoverable costs. The Second Circuit has upheld awards of computerized legal research where a law firm "normally bills its paying clients for [those] cost[s]." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 369 F.3d 91, 98 (2d Cir. 2004); *see, e.g.*, *Poplawski v. Metroplex on the Atls., LLC*, No. 11-CV-3765, 2013 WL 12438839, at *13 (E.D.N.Y. Apr. 3, 2013) (recommending award of legal research fees on motion for default judgment), *report and recommendation adopted*, 2013 WL 12438843 (Apr. 26, 2013). As this cost is itemized on bills addressed to a paying firm client, (Billing Records at 15), the Court conclude it is appropriately awarded to Plaintiffs. *See Trs. of the Loc. 813 Ins. Tr. Fund v. Pers. Touch Funeral Serv., Inc.*, No. 18-CV-6535, 2019 WL 2295775, at *3 & n.2 (E.D.N.Y. May 30, 2019) (declining to award legal research costs where counsel failed to "show[ ] that they usually bill their clients for the cost of online legal research"). And after reviewing the record, the Court finds these costs to be reasonable.

Therefore, the Court respectfully recommends an award of $692.60 in costs.

D.      Prejudgment Interest

Plaintiffs seek prejudgment interest on the damage award. (Proposed Default J.). Prejudgment interest awards "reflect[ ] a recognition of the principle that damages are properly ascertained as of the date of the breach and a recognition that there may be a

time lag between the accrual of a plaintiff's cause of action and the resulting damage sustained and actual payment by defendant." *Brushton-Moira Cent. Sch. Dist. v. Fred H. Thomas Assocs., P.C.*, 91 N.Y.2d 256, 262 (1998).  Under New York law, parties are entitled to recover interest "upon a sum awarded because of a breach of performance of a contract." C.P.L.R. § 5001(a).[12]  Such "[i]nterest shall be computed from the earliest ascertainable date the cause of action existed." *Id.* § 5001(b); *Brushton-Moira Cent. Sch. Dist.*, 91 N.Y.2d at 261–62 ("Damages are intended to return the parties to the point at which the breach arose and to place the nonbreaching party in as good a position as it would have been had the contract been performed.  Thus, damages for breach of contract are ordinarily ascertained as of the date of the breach." (citations omitted)).  In cases of breach of guaranty, prejudgment interest begins to accrue from the date of the guarantor's default, *Saratoga Spa & Bath, Inc. v. Beeche Sys. Corp.*, 230 A.D.2d 326, 333 (3d Dep't 1997), and accrues through the date of decision, C.P.L.R. § 5001(c).  In addition, the non-breaching party is entitled to interest on the total award, including the accrued interest, through the date of the entry of final judgment.  *Id.* § 5002 ("Interest from verdict, report or decision to judgment").  The statutory interest rate is 9% per year.  *Id.* § 5004.

As discussed above, 56 Willoughby have established Zhang's breach of guaranty. They also established that the earliest date of that breach is October 1, 2019, the date Willoughby DTB's September base rent became due.  (Lease §§ 1.6–.8; Replacement Guaranty at 1).  Because Zhang waived all notice requirements, October 1, 2019 is also the date of his default as guarantor.  (Replacement Guaranty at 1–2).  Thus, it is

---

[12] New York law prejudgment interest rules apply to a contract claim governed by New York law.  *See, e.g.*, *Arch Specialty Ins. Co.*, 2020 WL 6581000, at *6–7.

respectfully recommended that Plaintiffs be awarded interest of $27.86 per day[13] beginning October 1, 2019, until the date of the Court's final decision. It is further recommended that Plaintiffs be awarded interest, at 9% per annum on the total award, inclusive of accrued interests and costs, through the date final judgment is entered in a total amount to be calculated by the Clerk of Court.

CONCLUSION

For the reasons stated, it is respectfully recommended that Plaintiffs' motion for a default judgment be granted and judgment be entered against Zhang as follows:

- $113,000 in damages;

- $15,617.50 in attorney's fees;

- $692.60 in costs;

- $27.86 per day in interest from October 1, 2019, until the date of the Court's decision on this Report and Recommendation; and

- Interest at a rate of 9% per annum on the total award from the date of the Court's decision on this Report and Recommendation and through the date of entry of final judgment.

That is, the Court recommends a total award of $129,310.10, plus interest of $27.86 per day from October 1, 2019, through the date of entry of any decision on this Report and Recommendation, plus interest at 9% per annum on the total award through entry of final judgment.

Any objections to the Report and Recommendation above must be filed with the Clerk of the Court within 14 days of receipt of this report. Failure to file objections within the specified time waives the right to appeal any judgment or order entered by

---

[13] $113,000 multiplied by 9% and divided by 365 days equals $27.86 in statutory interest per day.

the District Court in reliance on this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *Caidor v. Onondaga County*, 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate [judge's] report operates as a waiver of any further judicial review of the magistrate [judge's] decision.").

Plaintiffs are directed to serve a copy of this Report and Recommendation on Zhang by mail and file proof of service on the record.

SO ORDERED.

*/s/ Sanket J. Bulsara* July 27, 2021
SANKET J. BULSARA
United States Magistrate Judge

Brooklyn, New York